No. 31,167

W. B. Bryant et al., *Appellees,* v. W. M. Glenn, *Appellant.*

(33 P. 2d 167.)

Opinion filed June 9, 1934.

*Albert Watkins,* of Dodge City, *J. Graham Campbell,* of Wichita, and *W. M. Glenn,* of Tribune, for the appellant.

*O. G. Underwood* and *Leon L. Askren,* both of Greensburg, for the appellees.

The opinion of the court was delivered by

Dawson, J.: This was an action to rescind and cancel a contract for the sale of a quarter section of Greeley county land and to recover the consideration paid thereon.

The facts in brief were these: On June 11, 1930, one Wirth, as agent, made a contract to sell to plaintiff Bryant 160 acres of prairie land, which belonged to defendant Glenn, for a stated consideration of $3,200, which was to be satisfied thus:

> $200 in cash;
> $600 on approval of title;
> Farm implements valued at $1,500, viz.:
>     2 Allis-Chalmers tractors,
>     1 Oil Pull tractor,
>     1 I. H. C. truck,
>     1 tandem disc;
> $900 encumbrance, payable in one, two and three years.

The contract also provided that an abstract showing good, clear and unencumbered title should be submitted to plaintiff for examination on or before June 25, 1930.

Glenn, defendant and owner of the land, ratified the contract and submitted the abstract for examination on July 2. Some time previous to this sale to plaintiff, defendant Glenn had made a contract to sell the land to one McAdam; and on June 26, 1930, the latter began suit against Glenn for specific performance. The abstract submitted to plaintiff revealed the pendency of the action between McAdam and Glenn; consequently plaintiff declined to close the transaction with defendant; but on August 27, 1930, plaintiff and defendant agreed to modify their former contract as follows:

Plaintiff was to pay to the Greensburg State Bank the sum of $600 to satisfy a mortgage of $377 on the land held by one Little, for which an assignment of Little's mortgage was to be made in defendant's favor. The balance of this sum was to be paid to Glenn. Plaintiff was to execute notes and a mortgage for $900 in favor of defendant. These instruments were to be held by the bank until plaintiff was placed in possession and until the title to the land was approved by his attorney. Glenn was to execute a deed to be delivered when all the terms of the contract were satisfied. Glenn further agreed to have abstract of title certified down to date, showing good, merchantable title; and both title and possession were to be approved before the notes and mortgage and balance of cash should be surrendered to Glenn. Just when the farm machinery was to be delivered and to whom does not appear, but the fact of their delivery is not in dispute.

It appears that this contract was never carried into effect. In September, and again in October, 1930, plaintiff urged Glenn to submit his abstract of title for examination. Plaintiff also wrote to Glenn repeatedly demanding the abstract and possession of the property. These reasonable demands were ignored, and, indeed, they could not be complied with. The pendency of the suit of *McAdam v. Glenn* prevented; and McAdam had placed a tenant of his own upon the land, and the latter had broken it and planted it to crops. In June, 1931, the action of *McAdam v. Glenn* was decided in favor of McAdam.

On August 8, 1931, this action was begun. On November 2, 1931, defendant Glenn answered alleging that he was unable to convey title, owing to the decision in the McAdam lawsuit. Glenn further alleged that he intended to appeal from that decision to the supreme court, and prayed that a final decision in plaintiff's cause against

him be deferred until the appeal in McAdam's case was determined by the supreme court.

Some time after filing that answer, Glenn apparently effected a settlement of his lawsuit with McAdam, whereby the latter executed to Glenn a quit-claim deed and assigned his interest as landlord and supplied one from Montague, his tenant; and McAdam entered a satisfaction and release of his judgment against Glenn. Defendant offered to show these facts at the trial of the present action on March 30, 1932. By leave of court, Glenn also filed a supplemental answer offering to convey good title and asking for specific performance and for judgment against plaintiff for $320 for the breaking of the prairie sod on the land during the interval of delay since plaintiff had contracted for its purchase. The evidence adduced at the trial raised no sharp issue of fact except in respect to the actual value of the tractors and other implements which had been delivered as part payment for the land.

The trial court held that plaintiff was entitled to rescind the contract, that the fair value of the farming machinery was $750, and that plaintiff was entitled to recover that sum, plus the $800 he had paid in cash, plus $22 he had paid as taxes on the property—an aggregate amount, with interest, of $1,679.45. It held also that the notes and mortgage held by the bank should be returned to plaintiff, and that the deed, abstract and other papers deposited in the bank by defendant should be returned to him.

Judgment was entered accordingly. Defendant appeals, urging that rescission of a contract should not be permitted where damages will adequately redress the wrongs of which the plaintiff complains. Here, however, there was no such issue, nor was there evidence adduced upon which a judgment in damages could be predicated. Indeed, defendant's answer tacitly conceded that plaintiff was entitled to rescind. In part it read:

"The defendant admits that at this time he is unable to convey a good title to said real estate to the plaintiffs on account of this litigation in the McAdam suit, but he fully intends to convey such merchantable title to the plaintiffs if the appeal to the supreme court reverses the judgment of the district court and he is able to convey such title. The defendant admits that he has been paid the sums of $100 and $600, as before mentioned, and if he is unable to convey the title to said land to the plaintiffs as he has agreed to do, then he is willing to repay said sums to these plaintiffs with interest from the date of their payments and to cancel the notes and mortgage still held in the Greensburg State Bank.

"The defendant therefore asks that this case be continued until the hearing of the appeal and decision of the supreme court in the case of *McAdam v. Glenn,* or that judgment be rendered in favor of the plaintiffs and against the defendant for the sum of $700 with interest at 6 per cent from August 27, 1930, and for the cancellation and return of the notes for $900 and the mortgage on said real estate."

This suit to cancel and rescind was filed a year after the contract was made and after plaintiff's repeated urgings that defendant should perform his contract were unanswered and totally ignored. It was only after waiting a whole year for possession and tender of good title that plaintiff brought this action, and it was fifteen months after the making of the contract that defendant filed the foregoing answer admitting his inability to perform, and offering to submit to a judgment of rescission and for the return of part of the consideration *if* he should fail to win another lawsuit in which plaintiff had no concern. In *Kimball v. Bell,* 47 Kan. 757, 28 Pac. 1016, this court held:

"Where K. sells to B. certain blocks of land, and gives B. a title bond, in which he agrees, upon payment of the purchase money by B., to execute and deliver to B. a deed conveying an indefeasible estate in fee-simple, B. may refuse to accept a deed for said blocks of land upon the discovery of a cloud on the title in the form of an unsatisfied mortgage of record; and unless K., within a reasonable time after demand, pays such mortgage, or procures a release of the same, B. may bring suit to recover back the money paid on such contract." (Syl. ¶ 1.)

In the same case on rehearing, 49 Kan. 173, 30 Pac. 240, it was held:

"A purchaser of land is entitled to recover back the money paid by him, where all the payments have been made, and seven months have elapsed since the last payment on one bond, and nearly a month since the last on another, and a mortgage on the premises has not been paid or released." (Syl. ¶ 1.)

See, also, *Sherwin v. Baxter,* 86 Kan. 730, 121 Pac. 1128; *Monger v. Effland,* 87 Kan. 710, 125 Pac. 46; *Custenborder v. Cunningham,* 121 Kan. 416, 247 Pac. 879; Notes in 36 A. L. R. 482-486; 40 A. L. R. 693; 48 A. L. R. 29 *et seq.;* 59 A. L. R. 189, 271-275; 66 C. J. 1477 *et seq.;* 27 R. C. L. 623 *et seq.;* 1 Black on Rescission and Cancellation, 2d ed., ch. 12; 3 id. ch. 35.

In *King v. Machine Co.,* 81 Kan. 809, 106 Pac. 1071, it was held that where rescission is proper, the innocent party may not only recover the consideration paid but also reimbursement for expenses lawfully made in expectation that his adversary would perform his

part of the contract. In the present case it must be held that when this action was begun the failure and inability of defendant to perform were sufficient basis for rescission and cancellation. Defendant's answer was a virtual admission of plaintiff's right to the relief and redress for which he sued; and judgment to that effect was properly decreed.

Objection is made to the allowance of $750 for the three tractors, the truck and the other farming machinery. The trading value placed upon them at the time the contract was made was $1,500. The court fixed their value at $750—largely, as defendant contends, "on its own notion" of what they were worth. Plaintiff might have complained about this, but we cannot discern how defendant was prejudiced by it. Complaint is also made because the trial court did not permit Wirth to testify as to the value of the machinery, but since the record does not show what his testimony would have been, no error can be predicated upon its exclusion. (*Hunter v. Greer*, 137 Kan. 772, 22 P. 2d 489.)

At the final hearing defendant offered to render belated performance, but the rights and liabilities of the parties were fixed when this action was begun—certainly not later than when defendant answered admitting his inability to perform. Moreover, even at the final hearing defendant's offer to perform was conditioned upon an additional consideration of $320 to be paid to him by plaintiff for the breaking of the prairie sod. Since plaintiff had never made a contract of that sort, nor given his assent to the breaking of the land, and mayhap had no wish to have it broken, he was under no obligation to pay for that work, and the court could not equitably have imposed such obligation upon him.

There is no error in this record, and the judgment is affirmed.