No. 32,106

J. H. Moore, Jr., *Appellee*, v. George Cox et al., *Defendants;* Susan H. Seaverns and Emma H. Rouse, *Appellants.*

(45 P. 2d 883)

Opinion filed June 8, 1935.

*Otis S. Allen* and *George S. Allen,* both of Topeka, for the appellants.
*A. F. McCarty,* of Salina, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This was an action by the vendee in a contract for the sale of real property to recover earnest money paid on the ground the vendor failed to perform the contract by perfecting title and conveying the property. A jury was waived. The court made findings of fact and rendered judgment for plaintiff. The vendor has appealed.

Part of the facts involved here are stated in *Seaverns v. Taylor,* 133 Kan. 268, 299 Pac. 931. For our purposes it is sufficient to say that Susan H. Seaverns, an elderly widow, owned land in Wallace

county, where she resided. In July, 1929, her sister, Emma H. Rouse, of Portland, Ore., initiated proceedings in the probate court of Wallace county, as a result of which Mrs. Seaverns was adjudged to be an incompetent person and Mrs. Rouse was duly appointed as guardian of her person and estate, and qualified as such. On August 12, 1929, Mrs. Rouse, as such guardian, entered into a written contract with J. H. Moore, the plaintiff here, by which she agreed to sell plaintiff about 2,700 acres of Mrs. Seaverns' land and cause the same to be conveyed to him in fee simple, by general warranty deed, and to furnish abstracts showing good merchantable title, for the sum of $14,400, to be paid $1,000 cash "as earnest money, . . . Said one thousand dollars to be left with the probate court of Wallace county, Kansas, pending judicial proceedings permitting the sale of said land"; the balance to be paid in cash on completion of contract. The $1,000 was paid at once and George Cox, probate judge of Wallace county, receipted for it, "to be applied to the assets of the estate of Susan H. Seaverns." Mrs. Rouse and the probate judge then went to the Citizens State Bank at the county seat of Wallace county and deposited this $1,000 in the joint names of George Cox, probate judge, and Emma H. Rouse, guardian. On August 17, 1929, seven checks, totaling $561.64, payable to various parties, were drawn on this account, signed by both of the depositors, which the bank paid and charged to the account. One of these checks was to an attorney for his fee in appearing in the probate court and for other services performed about that time for Mrs. Seaverns. The other checks, or the money obtained on them, paid various items of expenses of Mrs. Seaverns and Mrs. Rouse. Mrs. Rouse, as guardian of Mrs. Seaverns, presented an application to the probate court for authority to sell the real property pursuant to her contract with plaintiff, but this application appears never to have been presented to the court for action, and finally was dismissed.

On September 27, 1929, in response to an application therefor, Emma H. Rouse was removed as guardian of the person and estate of Susan H. Seaverns, and James E. Taylor was appointed and qualified as such guardian. He did not recognize the contract with plaintiff, nor did he take into his possession any part of the earnest money which had been paid thereon. On April 29, 1930, in a proceeding duly had therefor, the competency of Susan H. Seaverns was adjudged to be restored, and since then she has been and is

fully competent. No further steps have been taken by Susan H. Seaverns, or by Emma H. Rouse as her guardian, to carry out the contract which Mrs. Rouse as such guardian made with plaintiff by conveying such property to him as the contract provided. Plaintiff has been ready, able and willing to carry out the contract on his part.

It appears that soon after Mrs. Rouse drew the checks on the deposits above mentioned she took Mrs. Seaverns with her to her home in Oregon, and apparently they have been there all or most of the time since then. The Citizens State Bank, in which this deposit was made, failed sometime in 1932, and a receiver was appointed for it. On the application of George Cox, who is no longer probate judge, the receiver issued a certificate showing there was $438.36 in the account at the time the bank failed. Plaintiff made demand upon Emma H. Rouse and Susan H. Seaverns for the amount of earnest money he had paid, with interest. They answered in writing, agreeing to pay the amount they had received by the checks drawn on the account, less the check given to the attorney, which for some reason they contended was not for their benefit; but no such payment was made.

Plaintiff brought this action November 18, 1932. He made as defendants the probate judge and the surety on his bond. He also made as defendants Susan H. Seaverns, Emma H. Rouse, and Emma H. Rouse as guardian of the person and estate of Susan H. Seaverns. The trial court rendered judgment in favor of George Cox and the surety on his bond as probate judge. There is no appeal from that part of the judgment, hence its correctness is not before us for determination. The court rendered judgment in favor of plaintiff and against Emma H. Rouse in the sum of $1,000 with interest at six per cent since November 19, 1929; also gave plaintiff judgment against Susan H. Seaverns in the sum of $561.64, being joint with the judgment against Emma H. Rouse to that amount, and adjudged and ordered George Cox to assign to Emma H. Rouse the certificate of the receiver of the Citizens State Bank for $438.36, the amount of the deposit in the bank when it closed.

Emma H. Rouse and Susan H. Seaverns have appealed. They argue that since the contract contemplated an order of the probate court authorizing the sale, and since such an order never was made, and Mrs. Rouse was removed as guardian, performance on her part became impossible. Authorities are cited (13 C. J. 642, 644 *et seq.*)

to the effect that impossibility of performance of some contracts renders them null and void. But even under these authorities one who has received part payment for performance on his part, and thereafter finds for some reason it is impossible for him to perform, is not justified in keeping the advance payment. To permit that to be done would authorize an unjust enrichment of the party who had received the payment, to the loss of the one who had made the payment. Obviously this would be unjust. The general rule is that a vendee may recover money paid upon a contract when the vendor is unable or refuses to perform. (66 C. J. 1469; 27 R. C. L. 623; *Sellers v. Bell,* 10 Kan. App. 581, 63 Pac. 457; *Monger v. Effland,* 87 Kan. 710, 125 Pac. 46; *Nason v. Patten,* 88 Kan. 472, 129 Pac. 138; *Bryant v. Glenn,* 139 Kan. 660, 33 P. 2d 167.) Naturally, circumstances may vary, and these variations require modifications of the general rule. Here there is no contention the vendee was put in possession of the property, nor that the failure to perform was his fault in any respect.

Appellants argue the action was barred by the three-year statute of limitations, on the theory that Mrs. Rouse was discharged as guardian September 27, 1929, and the action was not brought until November 18, 1932. The point is not well taken. There was evidence to the effect that soon after the checks were drawn on the account, August 17, 1929, Mrs. Rouse returned to her home in Oregon and took Mrs. Seaverns with her. There is nothing in the record to show either of them was in this state again until this action was brought. They wrote plaintiff from Oregon in September, 1932, acknowledging their indebtedness to him for the amount of money they had drawn and used, and solicited him to aid them in getting a loan on the land to enable them to pay it. Under this evidence the court found against appellants on this point, and the finding is well sustained by the evidence.

Appellant Emma H. Rouse complains specifically of the judgment against her for the full amount of the earnest money, $1,000. On her behalf it is argued the probate judge should be charged with that money in excess of that drawn by the checks, August 17, 1929. As previously pointed out, the court found in favor of the probate judge and his surety, and since no appeal was taken from this portion of the judgment the question of his liability is not before us. The probate judge as such had no authority to handle the money. Whatever he did about it was extrajudicial. Some language of the

contract might be interpreted as indicating that the parties to it contemplated using the probate court, or the judge of the court, as an escrow holder of the earnest money. But that theory is not argued, and perhaps could not be, in view of the receipt given by the probate judge. This indicates that, tentatively at least, the judge was approving the contract, and the money was noted as being received as a part of the assets of the estate of Mrs. Seaverns. As such Mrs. Rouse was personally responsible for it. (28 C. J. 1165, and cases.) When she was discharged as guardian, without having complied with the contract on her part, and with no hopes that it would be carried out, it was her duty to make settlement with the plaintiff. Perhaps the only reason she did not do so was that she had drawn more than half the money and used it for the benefit of her ward, and at that time was unable to replace it. She left the remainder of it in the bank for more than two years, until after the bank failed. She is now in position to receive whatever dividends are paid on the balance of the deposit.

We see no error in the judgment, and it is affirmed.