Sam B. HERRON, Sr.

v.

V. A. HERRON, Jr.

No. 16671.

United States Court of Appeals
Fifth Circuit.

May 23, 1958.

1. Now 10 U.S.C.A. §§ 2301, 2303–2305.

Phil Stone, James Stone & Sons, Oxford, Miss., Joel P. Walker, Jr., Chatham & Walker, Hernando, Miss., for appellant.

Chester L. Sumners, Smallwood, Sumners & Hickman, Oxford, Miss., James McClure, Sr., McClure, Fant & McClure, Sardis, Miss., for appellee.

Before RIVES, BROWN and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

This is an appeal from the United States District Court from the Northern District of Mississippi dismissing appellant's complaint. Jurisdiction is based on diversity of citizenship.

■ The proceedings in the district court that produced this appeal raise the following question: Was it reversible error for the district court to allow defendant to raise the defense of the statute of limitations on a motion that the court insisted on treating as a motion to dismiss and not as a motion for a summary judgment when—

(1) it was necessary to go outside of the pleadings to prove the application of the statute of limitations,

(2) the object of the motion was to try the main issue in the case and the effect of the dismissal was a decision on the merits, and

(3) the complainant had no notice of the hearing and no opportunity to meet the issues?

The question answers itself. The complainant never had his day in court. There was reversible error.

I.

Suit was to establish a trust. Sam Herron, Sr., appellant, filed a complaint against his nephew, V. A. Herron, Jr., alleging that for many years the defendant operated a store in Oakland, Yalobusha County, Mississippi, as trustee for the heirs of Mrs. B. M. Herron. The complaint prayed that: (1) a trust be decreed; (2) the defendant produce books and records pertaining to the operation of the store, for inspection and

copying; and, (3) a master be appointed to take an accounting of the operation of the store for the period from 1932 to the date of the suit.

Mrs. Herron died in 1925. There was no administration of her estate. Her sole heirs were four children—Sam, his two brothers, and sister. They agreed orally to keep their inherited property intact and to operate their mother's farm and store under the name of "The B. M. Herron Estate". The store failed, but in 1932 a new store was established with the sum of $500 taken from the funds of the estate. Sam Herron alleged that the heirs agreed that the store would be operated by V. A. Herron, Jr., as trustee for the owners of "The B. M. Herron Estate". Over the years the $500 increased and multiplied until, with other causes, it produced a first-class family feud.

## II.

The pleadings in the district court proliferated to a point characteristic of litigated family feuds. That is the point where a profusion of pleadings confounds the lawyers and confuses the courts.

Following a series of motions by both sides, and an amended complaint, the defendant filed an answer denying that there was any trust and setting up the following defenses: (1) lack of jurisdiction; (2) the statutes of limitations for three, six, and ten years; (3) laches; (4) estoppel; and (5) res judicata. November 30, 1956, appellant filed a motion for production and inspection of documents, with supporting affidavits, and served notice that the motion would be called for hearing December 14, 1956. December 3, 1956, appellee filed a motion invoking the statute of frauds and also moved for a preliminary hearing on the special pleas and defenses of statute of limitations, statute of frauds, laches, estoppel and res judicata. The court was not asked to fix the date of such hearing. The hearing on appellant's motion was continued by consent to January 7, 1957. On that day, appellee filed a supplemental answer and specific "plea for abatement", asking that the complaint be dismissed,

because of the pendency of proceedings on the same issue (but with conflicting allegations) in the Chancery Court of Yalobusha County between Sam Herron, appellant, and V. A. Herron, Sr.

The matter came on for hearing January 7, 1957 *on appellant's motion* for production and inspection of defendant's books. Appellant received a rude surprise. His motion was not heard. His suit was dismissed.

The sequence of events at the hearing is unclear. This is what happened—more or less. Counsel for appellee made a long preliminary statement giving his view of the case, referring to his special defenses and pleas, including the specific plea of abatement, and urging his right to examine the complainant, especially to make proof of the specific plea of abatement and of his defenses which he regarded as pleas of abatement. Appellant objected that: he had not had five days notice, as required under Rule 6(d), 28 U.S. C.A.; appellee had not obtained any order allowing the filing; he was taken by surprise for he had not expected complainant to be called as a witness, and the complainant should not be compelled to testify without notice at a hearing called for another purpose. Appellant objected also to the appellee's motion of December 3, on the ground that it did not conform to the Federal Rules. If intended as a motion for a summary judgment, appellant had no notice; the motion did not allege that there was no issue of fact, and, it is manifest that the complaint and answer raise many material issues of fact. Appellee answered: (1) his pleas and special defenses referred only to matters of record; (2) he had the right to examine complainant to show that there was no basis for the complainant's motion; (3) the plea raising the special defenses of the statute of frauds, statute of limitations, res judicata, and laches was "in no sense a motion for a summary judgment, but * * * pleas in abatement". Counsel for appellant then stated that he had no objection to the examination of his client, if it were limited to matters relating to his motion for pro-

duction of books. He insisted, however, that (1) he should be protected against surprise and that (2) defendant's pleas amounted to a motion for a summary judgment.

Here, the trial judge observed that the appellee's plea was "a motion to dismiss, as I understand, on various grounds, the statute of limitations, the plea of res judicata, laches, now they all stand strictly on the record". Counsel for appellee stated that as to the specific plea of abatement (in regard to the Chancery proceedings), "which actually has not been filed", the proof was a matter of record; as to the statute of limitations, it was necessary "to examine him [complainant] for the purpose of determining whether the likelihood of a trust ever having existed in the first instance, whether he can show the existence of such a trust". The trial judge pointed out: *"That is getting into the trial of the cause on the merits"*. Counsel for appellee repudiated the idea: "I don't think that is the way the case shapes up * * * [Before defendant is compelled to produce his books, the complainant] must at least go forward with sufficient proof to indicate to this Court that there may be some basis for the claim that the trust ever existed and on that basis, we want to examine him."

The trial court persisted: "I'm trying to discuss your motion [not appellant's] * * * Your Statute of Limitations * * * [I]sn't all of that a simple hard cold question of admitted facts, according to the pleadings?" Counsel for appellee explained that he wished to question the complainant as to when he learned about the trust and when he claimed that the trust was breached. The trial judge then held: "with respect to the Statute of Limitations you [appellee] may examine his [complainant] * * * and your examination will be confined strictly to that * * * I will hold you on that motion to this particular matter". In a last gasp, counsel for complainant again objected.

The examination of Sam Herron was extensive. It was a cross-examination, not preceded by any direct testimony, going fully into the merits of the case, as to whether there was a trust. There were no other witnesses. At the conclusion of the testimony, the trial judge held that there was no trust. The Court's order was that "the cause is barred by the Statute of Limitations", on the ground that, since there was no trust, plaintiff's only action was for conversion of funds barred by the three-year Statute of Limitations, Code Miss.1942, § 729.[1]

---

1. The Court held: "From the testimony of the plaintiff in this case, it seems to me there could be no question in the world as to the fact that the defendant in this case, Aubrey Herron, Junior, was nothing in the world in connection with this business but a clerk and a bookkeeper. He had no authority in connection with the business, according to the testimony of the plaintiff, and he was simply there to do what the brothers of the plaintiff instructed him to do. He was not the manager. He couldn't do anything except a few manual things around the store, except as he was directed to do. There is no proof in the world in the testimony of the plaintiff, and I think it contradicts that of the defendant that this defendant could have been a party to any trust at that time. He was merely a bookkeeper and clerk, to some extent, in running a little business which they all agreed might be run in the name of that young man, according to the testimony of the plaintiff in this case, and that existed up to the time of the purchase of the Moore property and its transfer to him, and the transfer of some merchandise. It seems to me that that brings this case into a situation where, if the plaintiff had any right against the defendant at all, he had a right of action for a conversion of funds, that that would be controlled by the Three Year Statute of Limitation. It seems that that statute is bound to apply, and the Court would so hold. * * *

"Order

"This cause came on for hearing on motion of the defendant to dismiss on plea of Statute of Limitations, Statute of Fraud and Laches, and the Court, having heard and considered the same, finds that the cause is barred under the Statute of Limitations.

"It Is, Therefore, Ordered that the complaint be dismissed with prejudice at the cost of the complainant. * * *"

The record shows that the attorneys for both parties were surprised that the hearing was determinative of the case. But it was small wonder that the attorney for complainant was surprised. His motion for production and inspection of defendant's books—the reason for the hearing—was lost in the shuffle. Instead, he found that the trial judge had decided the case on the merits, on a motion never set for a hearing. With grace and skill, counsel for appellee argues that the only surprise at the hearing was the surprise of appellant's counsel at his client's testimony.

### III.

The parties and the court never reached any agreement as to what appellee's motion *was* or what it was intended to do. Appellee insisted that, although he complied with the requirement of the Federal Rules in pleading the statute of limitations and other affirmative defenses in his answer and in his supplemental motion, they are "pleas in abatement" and in no sense a motion for a summary judgment. Appellant insisted that appellee's motion was one for summary judgment. The trial judge stated in his order that "the cause came on for hearing on motion of the defendant to dismiss on plea of statute of limitations".

"Pleas in abatement", as such, have been abolished. Rule 7(c). The dismissal of the complaint was based, therefore, on a motion to dismiss or a motion for summary judgment.

Under Rule 6(d) appellant was entitled to five days notice of the hearing of a motion to dismiss. Rule 6(d) is not a hard and fast rule, however, and if it is shown that a party had actual notice and time to prepare to meet the questions raised by the motion of an adversary, Rule 6(d) should not be applied. Here, appellant had no notice. His attorney expected to argue his own motion. The witness was examined closely, without the records; although an important part of his case, as shown by the complaint, was that records should be produced and inspected in order to determine the facts. It is just such surprise that the Federal Rules were designed to prevent.

It is clear that Rule 8(c) requires affirmative defenses to be pleaded, in order to prevent surprise. There is general agreement also, under Rule 9(f), that even the defenses of limitations or laches may be asserted by motion to dismiss for failure to state a claim—provided that the complaint shows affirmatively that the claim is barred. Suckow Borax Mines v. Borax Consolidated, 9 Cir., 1950, 185 F.2d 196; Berry v. Chrysler Corp., 6 Cir., 1945, 150 F.2d 1002; Reeves Steel Construction Co. v. Weiss, 6 Cir., 1941, 119 F.2d 472; Panhandle Eastern Pipeline Co. v. Parish, 10 Cir., 1948, 168 F.2d 238; Gossard v. Gossard, 10 Cir., 1945, 149 F.2d 111; 2 Moore's Federal Practice, Sec. 8.28, p. 1698; 1 Barron & Holtzoff, Federal Practice & Proc., Sec. 281, p. 520.

Even if a complaint does not show on its face the factual basis for an affirmative defense, a litigant may go beyond the pleadings, under Rule 56, by a motion for a summary judgment. But only if the facts are undisputed. The 1946 amendment to Rule 12(b) requires a motion to dismiss to be treated as a motion for summary judgment, if the movant goes outside the pleadings to prove his affirmative defense. "In short, the motion to dismiss is thereby converted into a motion for summary judgment." Suckow Borax Mines v. Borax Consolidated, 9 Cir., 1950, 185 F.2d 196, 205. See Butcher v. United Elec. Coal Co., 7 Cir., 1949, 174 F.2d 1003; Notes of the Advisory Committee on Rules, 28 U.S.C.A. 12(b).[2]

2. 28 U.S.C.A. 12(b) p. 339:
"The addition at the end of subdivision b makes it clear that on a motion under rule 12(a) (6) extraneous material may not be considered if the court excludes it, but if the court does not exclude such material the motion shall be treated as a motion for summary judgment and disposed of as provided in rule 56. It will also be observed that if a motion under rule 12(b) (6) is thus converted into a summary judgment motion, the

The rules safeguard a complainant from surprise. Rule 56 requires that the motion for a summary judgment be served "at least 10 days before the time fixed for the hearing". Rule 6(d) requires five days. Under Rule 56 "the pleadings depositions, and admissions on file, with the affidavits, if any, [must] show that there is no genuine issue as to any material fact". The amendment to Rule 12(b) provides that if matters outside the pleadings are to be considered and the motion converted to one for summary judgment, "all parties shall be given a reasonable opportunity to present all material made pertinent to such a motion by Rule 56".

The instant case is similar to Butcher v. United Elec. Coal Co., 7 Cir., 1949, 174 F.2d 1003, 1006. That was a suit for an accounting and recognition of a constructive trust. The defendant filed a motion to dismiss, setting up the statute of limitations, laches, and the statute of frauds. The district court granted the motion and dismissed the suit. The Court of Appeals reversed the district court, holding: "According to Rule 12(b) and its associated Rule 56, summary judgment may be rendered only if there are no genuine issues of fact to be resolved * * *. On such a motion it is no part of the court's function to decide issues of fact, but solely to determine whether there are any such issues of fact to be tried. * * * [T]he limitation * * * [is] the usual type which is to be relied upon as a matter of affirmative defense and which may be avoided by various facts such as those which appellant was denied opportunity to bring forward. * * * The basis for the decision was not that there were no controverted issues, but rather that there were such issues, as to all of which the court ruled adversely to appellant, although 'on a motion to dismiss because the complaint fails to state a cause of action, the facts set forth in the complaint are assumed to be true * * *.' "

■ Rule 34 states that when a party moves for production of books and records he must show good cause. Rule 43 (b) permits a defendant to interrogate a complainant. These two rules, however, cannot be used, singly or together, to circumvent the express requirements of Rule 12(b) and 56.

■ Spiralling back through the convolutions in this case to the original complaint, we find an action to establish an oral trust allegedly created in 1932. Denial that there was a trust produced a material issue of fact. In going into the disputed facts and in dismissing the suit, the trial judge went beyond the scope of his authority as defined in Rules 12(b) and 56.

The solid justice embedded in these two rules is well illustrated in the instant case. There may or may not have been a trust. But the complainant was entitled to a fair shake at proving the existence of the trust. Instead, without notice, without an opportunity to produce witnesses or to examine books and records of obvious bearing on the issue, without realizing what was happening to him—it happened: the case was disposed of on the merits. Rules 12(b) and 56 are to prevent just such an oddity.

Complainant never had his day in court.

The judgment is reversed and remanded.

amendment insures that both parties shall be given a reasonable opportunity to submit affidavits and extraneous proofs to avoid taking a party by surprise through the conversion of the motion into a motion for summary judgment. In this manner and to this extent the amendment regularizes the practice above described.

As courts are already dealing with cases in this way, the effect of this amendment is really only to define the practice carefully and apply the requirements of the summary judgment rule in the disposition of the motion."
See Kithcart v. Metropolitan Life Ins. Co., 8 Cir., 1945, 150 F.2d 997.